**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------X

PABLO RAMIREZ CASTILLO, *individually*
*and on behalf of others similarly situated,*

                                                  *Plaintiff,*

            -against-

BARKING DOG NYC LLC (D/B/A BARKING
DOG) and SOKOL KACL,

                                         *Defendants*

-----------------------------------------------------------------X

**18-cv-8458**

**DECLARATION OF**
**MICHAEL FAILLACE,**
**ESQ. IN SUPPORT OF**
**PLAINTIFF'S MOTION**
**FOR DEFAULT**
**JUDGMENT**

Michael Faillace, an attorney duly admitted to practice in New York and in this Court, affirms on penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

1.      I represent the Plaintiff Pablo Ramirez Castillo ("Plaintiff"), in this lawsuit for unpaid wages, liquidated damages, and attorneys' fees under the FLSA and New York Labor Law and regulations.

2.      I submit this affirmation in support of Plaintiff's application for a default judgment against defendants Barking Dog NYC LLC (d/b/a Barking Dog) and Sokol Kacl (collectively, "Defendants") pursuant to Fed. R. Civ. P. 55(b)(2) and Local Rule 55.2(b).

<u>Procedural History</u>

3.      Plaintiffs commenced this action by filing the Complaint (and associated documents) on September 17, 1018.  A true and correct copy of the Complaint is attached hereto as <u>Exhibit 1</u>.

4.      This is an action for unpaid minimum and overtime wages, damages, interest, costs and attorneys' fees under the Fair Labor Standards Act (29 U.S.C. § 201 et seq., "the "FLSA") the New York Labor Law ("NYLL"), and associated rules and regulations. See <u>Exhibit 1</u>, generally, Complaint, for description of the nature of the claims.

5.      The Court has subject matter jurisdiction of the Plaintiff's federal claims pursuant to 29 U.S.C. § 201 *et seq.* (FLSA) and 28 U.S.C. § 1331 (federal question), and jurisdiction over the New York state law claims (such as the NYLL) under 28 U.S.C. § 1367(a) (supplemental jurisdiction).  *See* Exhibit 2.

6.      Defendant Barking Dog NYC LLC was served with process on September 19, 2018.  Defendant Sokol Kacl was served with process on September 27, 2018. True and correct copies of the proof of service for Defendant Barking Dog NYC LLC and Individual Defendant Sokol Kacl are attached hereto as Exhibit 2 and Exhibit 3, respectively.

7.      Defendants did not answer or otherwise respond to the Complaint and certificates of default were obtained.  True and correct copies of the certificates of default issues are attached hereto as Exhibit 4 and Exhibit 5.

8.      No Defendant has appeared in this action since being served.

9.      Upon information and belief, Individual Defendant Sokol Kacl is neither an infant nor incompetent nor in the active service of the United States military.

10.      The declaration of Pablo Ramirez Castillo in support of this motion for default judgment is annexed as Exhibit 6.

<u>Statement of Facts Supporting Entry of Judgment</u>

11.      As alleged in the Complaint and as stated in Plaintiff's declaration, Defendants own(ed), operate(d), and control(led) a restaurant located at 1678 Third Ave, New York, NY 10128, under the name Barking Dog.  (Complaint ¶ 2; Ramirez Dec. ¶ 4).

12.      Plaintiff is a former employee of Defendants.  (Complaint ¶ 4; Ramirez Dec. ¶ 3).

13.     Defendants had the power to hire and fire Plaintiffs, controlled Plaintiff's terms and conditions of employment, and determined the rate and method of Plaintiff's compensation. (Complaint ¶ 31; Ramirez Dec. ¶ 5).

14.     Defendants had employees who handled and used goods that were produced outside the State of New York and travelled through interstate commerce.  (Complaint ¶ 33; Ramirez Dec. ¶ 12).

15.     In 2017, Defendants had a gross volume of sales that exceeded $500,000 (Complaint ¶ 32).

16.     Defendants regularly required Plaintiff to work without paying them minimum and overtime wage compensation. (Complaint ¶ 6; Ramirez Dec. ¶ 25).

<u>Pablo Ramirez Castillo</u>

17.     Plaintiff Pablo Ramirez Castillo ("Plaintiff Ramirez") was employed by Defendants as a delivery worker from approximately January 2017 until on or about September 2017.  (Complaint ¶¶ 36-37; Ramirez Dec. ¶¶ 7-8).

18.     Plaintiff Ramirez was also required to spend a significant portion of his work day performing non-tip duties such as peeling carrots and potatoes, preparing food, and assisting in the kitchen. (Complaint ¶¶ 5, 38-39; Ramirez Dec. ¶ 9)

19.     Plaintiffs Ramirez' work did not require discretion or independent judgment. (Complaint ¶ 41; Ramirez Dec. ¶ 11)

20.     From approximately January 2017 until on or about September 2017, Plaintiff Ramirez's schedule varies and ranged from 40 to 56 hours per week with an average of 48 hours per week. (Complaint ¶ 43; Ramirez Dec. ¶ 14).

21.     Throughout Plaintiff Ramirez' entire employment, Defendants paid him his wages in cash. (Complaint ¶ 44; Ramirez Dec. ¶ 15).

22.     From approximately January 2017 until on or about September 2017, defendants paid Plaintiff Ramirez $4.00 per hour.  (Complaint ¶ 45; Ramirez Dec. ¶ 16).

23.     Defendants only granted Plaintiff Ramirez a 15-minute break throughout the day. (Complaint ¶ 48; Ramirez Dec. ¶ 19).

24.     Defendants never notified Plaintiff Ramirez that his tips were an offset for wages. Further, Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Ramirez's wages (Complaint ¶¶ 46-47; Ramirez Dec. ¶¶ 17-18).

25.     Plaintiff Ramirez was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked (Complaint ¶ 49; Ramirez Dec. ¶ 20).

26.     Defendants did not provide Plaintiff Ramirez with any written notice of his rate of pay, his employer's regular pay day and other information required by NYLL §195(1). (Complaint ¶ 52; Ramirez Dec. ¶ 23).

27.     Further, Defendants did not provide Plaintiff Ramirez with any document or other statement accurately accounting for all of his actual hours worked, or setting forth the rate of pay for all of his hours worked. (Complaint ¶ 51; Ramirez Dec. ¶ 22).

28.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Ramirez regarding minimum wages under the FLSA and NYLL. (Complaint ¶ 50; Ramirez Dec. ¶ 21).

29.     Defendants required Plaintiff Ramirez to purchase "tools of trade" with his own

funds – including a bicycle, a jacket, a helmet, a chain and a lock. (Complaint ¶ 53; Ramirez Dec.

¶ 24).

<u>Plaintiff is entitled to Judgment by Default</u>

30.     It is well settled that Defendants who fail to file an answer or otherwise move in

respect to a complaint filed, are deemed to have admitted all of the well-pleaded allegations in the

complaint pertaining to liability.  *D.H. Blair & Co., Inc. v. Gottdiener,* 462 F.3d 95, 107 (2d Cir.

2006) ("Rule 55 tracks the ancient common law axiom that a default is an admission of all well-

pleaded allegations against the defaulting party") (citation omitted).

31.     Defendants have failed to file an answer or otherwise respond to the Complaint,

despite the time to do so having expired. Thus, Plaintiff's allegations are unchallenged, and

consequently the Complaint and declarations attached hereto establish Plaintiff's right to default

judgment.

32.     Upon entry of a default, the court may award damages based upon evidence

submitted through affidavits and exhibits, or by an evidentiary hearing.  *Cement & Concrete

Workers Dist. Council Welfare Fund v. Metro Foundation Contractors, Inc.*, 699 F.3d 230, 234

(2d Cir. 2012). "While Rule 55(b)(2) permits the district court to conduct a hearing to

determine damages**,** such a hearing is not mandatory." *Id.*  "Together, 'Rule 55(b)(2) and relevant

case law give district judges much discretion in determining when it is "necessary and proper" to

hold an inquest on damages.'" *Id.* (quoting *Tamarin v. Adam Caterers, Inc*., 13 F.3d 51, 54 (2d

Cir. 1993)).

33.     Plaintiff maintains that the proof submitted herewith is sufficient on its own to obviate the need for a hearing on damages. Based on the evidence Plaintiffs have put forward, damages, including back pay, liquidated damages, prejudgment interest, should be awarded in the amount of $40,940.31, and attorneys' fees and costs should be awarded in the amount of $5,379.00.

Plaintiff's Damages Calculation

34.     Annexed as <u>Exhibit 7</u> is a chart setting out the damages Plaintiff is entitled to recover.

35.     In the damages chart, the Plaintiff's wage and hour damages (including overtime wage damages, spread of hours wage damages, liquidated damages, and interest) are calculated in segments of time, broken into "Pay Periods."  Each pay period calculates the number of weeks in each period ("No. of Weeks in Pay Period"), and then based upon each of the Plaintiff's affidavits, lists the number of hours worked per week in each period ("Hours Per Week in Period). The applicable minimum wage data, and associated overtime rate, are included as applicable for each pay period. Then there is a column for Paid Wages, the first column calculates the "regular rate of pay" for each period by dividing the amount actually paid each week to each Plaintiffs (the "Credited Weekly Pay") for each period, then dividing that amount by the "Hours Per Week in Period"). The overtime rate is calculated using a 1.5 multiplier for time and a half overtime calculation later in the chart.  The "Credited Weekly Pay" is the amount of money actually paid and is based upon the Plaintiff's affidavit. The information the number of days each week in that period for which the Plaintiffs worked in excess of 10 hours per day is also included, and was therefore entitled to Spread of Hours Pay ("No. of SOH Days Per Wk in Period").

6

36.     *Calculations within the Chart* – The "Lawful Weekly Pay" column of the chart calculates what the Plaintiffs should have been paid per week during each pay period.  The actual formula used in this column is as follows:((greater of minimum wage or calculated base pay) * Hours Per Week up to 40) + ((greater time and a half rate) * (Hours Per Week over forty, if any)).

37.     The chart therefore automatically determines whether the effective calculated base rate of pay falls below the minimum wage, and if it does, it discards it.  If it does not, it uses it for the subsequent calculations (as the Plaintiffs are entitled to earn at least the minimum wage). The chart then automatically calculates what the hours should have been compensated at under the base rate of pay up to the first 40 hours of work per week, and then at time-and-a-half pay for any hours over 40.   The Chart then subtracts the amount actually paid to Plaintiffs (the "Credited Weekly Pay") and then derives the "Underpayment per Week."  This number is then multiplied by the number of weeks in each period and derives the total damages due for unpaid minimum wages and overtime for each period ("Unpaid Wages & OT").  The Chart then applies the liquidated damages provisions of the NYLL to the "Unpaid Wages and OT" automatically in the "Liq. Damages on Wages & OT" by 25% for damages occurring prior to April 9, 2011 and 100% for any subsequent damages.

38.     The unpaid spread of hours pay ("Unpaid Spread of Hours (SOH) Pay") is derived by multiplying (the number of SOH days per week) * (the number of weeks per period) * (the minimum wage).  The liquidated damages on SOH pay are all calculated at the rate of 100%.

39.     The legal basis for the damages calculations within the chart are set out below.

<u>Back Pay</u>

40.     At all times relevant to the FLSA claims in this action, the minimum wage rate

under the FLSA was $7.25 per hour.  Employees must be paid one-and-one half times their regular

rate for each hour worked over forty (40) hours worked in a week.  29 U.S.C. § 207(a)(1). From

2011 to 2013, the minimum wage under New York law was the same as under the FLSA. The New

York Minimum wage range increased to $8.00 per hour as of December 31, 2013; it further

increased to $8.75 per hour as of December 31, 2014; it further increased to $9.00 per hour as of

December 31, 2015; it further increased to $11.00 per hour on December 31, 2016 (in New York

City); and it further increased to $13.00 per hour on December 31, 2017 (in New York City).  New

York's rules on overtime explicitly incorporate those of the FLSA, and thus require pay at one-

and-one-half times the regular normal rate for each hour over forty hours worked in a week.  12

N.Y.C.R.R. § 142-2.2.

41.     The onus is on the employer to maintain proper records of employees' hours

worked, 29 U.S.C. § 211(c).  "In a FLSA case, in the absence of rebuttal by [D]efendants,

[P]laintiffs' recollection and estimates of hours worked are presumed to be correct." *Zeng Liu v.*

*Jen Chu Fashion Corp*, 2004 U.S. Dist. LEXIS 35, *8 (S.D.N.Y. 2004) (the court accepted the

Plaintiff's estimates of hours worked).

> An employee has carried out his burden [of production under the
> FLSA] if he proves that he has in fact performed work for which he
> was improperly compensated[,] and if he produces sufficient
> evidence to show the amount and extent of that work by just and
> reasonable inference. The burden then shifts to the employer to
> come forward with evidence of the precise amount of work
> performed or with evidence to negative the reasonableness of the
> inference to be drawn from the employee's evidence. If the employer
> fails to produce such evidence, the court may then award damages
> to the employee, even though the result be only approximate. *Id*.
> (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88
> (1946), and other cases).

42.     Here, Plaintiff was not paid minimum wage compensation at the lawful rate. Rather, Plaintiff Ramirez received an hourly rate of $4.00 throughout their entire employment. See Exhibit 7.

43.     Accordingly, to determine the Plaintiff's unpaid minimum wages, Plaintiff's regular credited rate is determined by multiplying his hourly rate times the average of hours worked; and to find the correct rate, the spreadsheet uses the legal minimum wage at the time of the employment. Then the minimum wage rate is multiplied by 1.5 to determine the overtime rate the Plaintiff should have received (if applicable).

44.     Plaintiff Ramirez is owed $14,060 in unpaid minimum wages. As of June 5, 2019, Plaintiffs Ramirez is entitled to $2,625.31 in prejudgment interest on wages and overtime. See Exhibit 7.

Three Year Statute of Limitations Under FLSA

45.     Under the FLSA, when the underpayment by the employer is willful, the limitations period increases from two (2) to three (3) years.  29 U.S.C. § 255(a).

46.     Willfulness under the FLSA means the employer "knew or showed reckless disregard for the matter of whether [the employer's] conduct was prohibited by the statute," McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988); Damassia v. Duane Reade, Inc., 2005 U.S. Dist. LEXIS 9768 at *5 (S.D.N.Y. May 20, 2005) (willfulness was properly pleaded by alleging, inter alia, that the employer was "aware of the existence of the FLSA and its overtime requirements."). Willfulness is also established when an employer fails to investigate whether its compensation policy was legal.  See Hardrick v. Airway Freights Systems, Inc., 63 F. Supp. 2d 898, 904 (N.D.Ill. 1999);   v. IBP, Inc., 339 F.3d 894, 909 (9th Cir. 2003), aff'd, 126

S.Ct. 514 (2005) (upholding the three-year statute of limitations because employer was on notice of FLSA requirements but "took no affirmative action to assure compliance" with them).

47.    In the present matter, Defendants were aware, or should have been aware, of the existence of the FLSA and its overtime requirements. However, the Defendants knew or disregarded the fact that their conduct was prohibited by the FLSA.  Furthermore, even if the Defendants did not know of the FLSA, the Defendants' actions are still willful because the Defendants failed to investigate whether their compensation policy was legal.  See Hardrick, 63 F. Supp. 2d at 904.

48.    Moreover, the Defendants failed to post the required information concerning the minimum wage laws, paid the Plaintiffs in cash, and had no system for recording, or even having Plaintiffs record, their hours.  This deliberate decision to disregard both FLSA and New York law, as well as Defendants' failure to take any affirmative step towards compliance, amount to willfulness for purposes of the FLSA and New York law.   Doo Nam Yang v. ACBL Corp., 427 F. Supp. 2d 327, 340 (S.D.N.Y. 2005)("A failure to pay is 'willful' when the employer knowingly, deliberately, or voluntarily disregards its obligation to pay wages")(internal quotations omitted).

49.    As Plaintiff can establish that Defendants' violation of the FLSA was willful, they are entitled to a three-year limitations period under the FLSA, i.e., starting from April 8, 2013, three years before the complaint was filed.  See, e.g., Decraene v. Neuhaus (U.S.A.), Inc., 2005 U.S. Dist. LEXIS 10836 at *23-*24 (S.D.N.Y. 2005).  Furthermore, under the New York Labor Law and regulations, the limitations period is six years, regardless of willfulness.  N.Y. Labor Law § 663(3).  Causes of action under the New York Labor Law accrue in the same manner as do causes of action under the FLSA.  See Godlewska v. Human Dev. Assoc., Inc., 2006 U.S. Dist. LEXIS

30519 at *12 (E.D.N.Y. May 18, 2006). Therefore, back pay under the New York Labor Law should be calculated from the start of Plaintiff's employment, which was less than six years from the filing date.

## Tools of the Trade

50.    Both federal and NY law do not permit an employer to charge employees for tools of the trade needed to perform their jobs.

51.    Federal law required that wages be paid "free and clear" of all "kick-backs' directly or indirectly to the employer or to another person for the employer's benefit" 20 C.F.R. §531.35.

52.    New York law, similarly, provides that if an employee must spend his own fund to purchase necessary equipment for the performance of his job, such expenses "must not bring the employee's wage below the required minimum wage" 12 N.Y.C.R.R. § 146-2.7(C); see also Hernandez v. JRPAC, 14-CV-4176 (PAE), 2016 U.S. Dist. Lexis 75430, *90-*96 (S.D.N.Y. June 9, 2016); Salinas v. Starjem, 123 F. Supp. 3d 442, 476 (S.D.N.Y. 2015)

53.    Plaintiff's total expenses on tools of the trade is $195. See Exhibit 7.

## Wage Notice and Statement Violations

54.    Defendants never provided Plaintiff with annual notices of their wages, or a wage statement, as required by NYLL §§ 195(1), 195(3).

55.    Plaintiff is therefore each entitled to statutory damages in the maximum amount of $5,000 under each section, for a total of $10,000.

## Liquidated Damages

56.    Liquidated damages of 100% of the unpaid wages under the FLSA are mandatory. See 29 U.S.C. § 216(b) ("Any employer who violates the provisions of section 206 or section 207

of this title shall be liable to the employee or employees affected in the amount of their unpaid

minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional

equal amount as liquidated damages"). The employer can make this award discretionary, however,

by a showing of good faith. 29 U.S.C. § 260. In the present matter, the Defendants have defaulted.

57.    Consequently, they cannot meet this burden, and thus an award of liquidated

damages is mandatory. Liquidated damages should be awarded in an amount equal to the unpaid

minimum wages and overtime. 29 U.S.C. § 216(b).

58.    Likewise, under the NYLL, "an employee is also entitled to liquidated damages

'equal to one hundred percent of the total of such underpayments found to be due,' unless the

employer proves a good faith basis for believing he or she was in compliance with the law." Wei,

2014 U.S. Dist. LEXIS 182325, *23 (quoting N.Y. Lab. Law § 663(1)).

59.    Given the uncontroverted evidence of Defendants' lack of good faith Plaintiffs are

entitled by statute to liquidated damages under the New York Labor Law, computed at 25% of the

unpaid minimum and overtime wages for the period of time prior to April 9, 2011 and 100% for

any subsequent unpaid minimum and overtime wages.

60.    Plaintiff's total unpaid wages equal $14,060. He is entitled to liquidated damages

in the amount of $14,060. See Exhibit 7.

Attorneys' Fees and Costs

61.    The FLSA and the New York Labor Law both contain fee-shifting provisions for

actions to recover unpaid wages. 29 U.S.C. § 216(b) ("The court in such action shall, in addition

to any judgment awarded to the Plaintiffs or Plaintiffs, allow a reasonable attorney's fee to be paid

by the defendant, and costs of the action"); N.Y. Labor Law § 663(1) ("[An employee] may recover . . . costs and such reasonable attorney's fees as may be allowed by the court").

62.     Plaintiffs incurred costs and attorneys' fees in pursuing this action, and seeks an award of reasonable attorney's fees and costs.

63.     The costs are a total of $514, including a filing fee of $400.00 and fees associated with serving the defendants with the summons and complaint.

64.     A breakdown of attorneys' fees and costs incurred in filing the Complaint and seeking default, in the form of this firm's standard billing sheet is attached hereto as Exhibit 8.

65.     The timekeepers on this matter are indicated by the following initials and have the following rates:

    a.  "MF" — Michael Faillace, $450 per hour
    b.  "DT" – Daniel Tannenbaum, $350 per hour
    c.  "PL" – Paralegal, $100 per hour

A brief biography of each attorney who performed billed work in this matter is as follows:

    i.  Michael Faillace is the Managing Member of Michael Faillace & Associates, P.C, and has been in practice since 1983. From 1983 to 2000, he was in-house Employment Counsel with International Business Machines Corporation (IBM). He taught employment discrimination as an Adjunct Professor at Fordham University School of Law since 1992 and at Seton Hall University Law School from 1995 to 1998, and he is a nationally-renowned speaker and writer on employment law.  He also is the author of the ADA, Disability Law Deskbook: The Americans with Disabilities Act in the Workplace,

published by Practicing Law Institute (PLI), and other employment law publications and presentations.

ii.  Daniel Tannenbaum is an associate at Michael Faillace & Associates, P.C.  He graduated Hofstra Law School in 2008, and is admitted to the New York Bar, New Jersey Bar, United States District Court, Southern District of New York and the United States District Court, Eastern District of New York. Since law school he has practiced labor and employment law and commercial litigation at a number of law firms. Since joining Michael Faillace & Associates, P.C. in March 2019, he has been responsible for a caseload involving all aspects of the firm's employment docket in federal court.

Conclusion

66.     Based on the above information and exhibits, Plaintiffs asserts the record supports a judgment against the Defendants in favor of Plaintiffs in the total amount of $40,940.31 for unpaid minimum and overtime wages damages, liquidated damages, prejudgment interest and other claims. Prejudgment interest continues to run and should ultimately be computed through the date judgment is entered.

67.     Additionally, Plaintiffs is entitled to $5,379.00 in attorneys' fees and costs.

68.     As shown herein, no inquest is necessary when, as in the present case, the Court has before it the proper measure of damages and evidence submitted by the Plaintiff that allows damages to be calculated with reasonable certainty.

69.     No part of the judgment sought has been paid.

70.     Sufficient definitive information and documentation is provided such that the amount provided for in the proposed judgment can be calculated, based upon allegations contained in the Complaint, and supplemented by the Plaintiff's declarations accompanying these motion papers.

71.     Plaintiffs also make a request for interest on the principal amount of the judgment not to exceed 9%, as stated above and in the damages calculations.

72.     Plaintiffs also request that the judgment provide that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4).

73.     The calculations made in arriving at the proposed judgment amount are set forth in both the explanation above, and in the damages chart itself.

74.     A proposed form of judgment is attached as Exhibit 9.

75.     For the reasons stated above and in the accompanying declarations and exhibits, the Plaintiff's motion for a default judgment should be granted.

76.     I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: New York, New York
        June 6, 2019

                                          _/s/Michael Faillace, Esq.___
                                          Michael Faillace, Esq.