UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
:
PABLO RAMIREZ CASTILLO,                                     :
:
                            Plaintiff,    :        No. 18-CV-8458 (VSB) (OTW)
:
        -against-                                          :        **REPORT & RECOMMENDATION**
:
BARKING DOG NYC LLC, et al.,                                :
:
                           Defendants.   :
:
------------------------------------------------------------x

**ONA T. WANG, United States Magistrate Judge:**

**To the Honorable Vernon S. Broderick, United States District Judge:**

**I.**     **Introduction**

Plaintiff Pablo Ramirez Castillo ("Plaintiff") brings this action against Defendants Barking Dog NYC LLC and Sokol Kacl ("Defendants") pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201 *et seq.*, and the New York Labor Law ("NYLL"), N.Y. Lab. Law §650 *et seq*, for, *inter alia*, failure to pay minimum wage and overtime compensation. This matter is before the undersigned for an inquest following the entry of a default against Defendants.

**II.**     **Background**

    **A.**     **Factual History**[1]

Plaintiff was employed as a delivery worker from January through September 2017 at Defendants' restaurant, Barking Dog, located at 1678 Third Avenue, New York, New York 10128. Complaint ("Compl.") (ECF 1) ¶¶ 4, 19, 21. Although he was classified as a delivery

---

[1] These facts are drawn from Plaintiff's complaint, which are accepted as true in the event of a default. *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).

worker, Plaintiff alleges that he also performed non-tipped duties, such as kitchen prep work. Compl. ¶ 5. Plaintiff alleges that throughout his term of employment, he worked approximately 48 hours per week and was paid $4.00 an hour in cash. Compl. ¶¶ 43-45. Plaintiff alleges that he was never provided proper wage notices, either in English or Spanish (his primary language), and was never notified that tips were being credited toward his wages. Compl. ¶¶ 46, 50-52. Plaintiff now brings claims of violation of minimum wage laws, unpaid overtime, notice violations, and recovery of equipment costs.[2]

### B. Procedural History

Plaintiff filed his complaint on September 17, 2018. (ECF 1).[3] After Defendants failed to respond to the complaint, Plaintiff sought and received a Clerk's Certificate of Default for the two defendants. (ECF 13; ECF 14). On July 12, 2019, Judge Broderick held an order to show cause hearing on why a default judgment should not be entered against Defendants. (ECF 25). Upon Defendants' failure to appear at the hearing, Judge Broderick ordered that a default be entered against Defendants and subsequently referred the matter to me for an inquest on damages. (ECF 27; ECF 28).

I ordered Plaintiff to file his proposed findings of fact and conclusions of law by August 16, 2019, with Defendants' opposition due September 13, 2019. (ECF 29). Plaintiff filed his inquest submissions on August 16, 2019. (ECF 30). To date, Defendants have not filed any submissions.

---

[2] Although Plaintiff brought a claim for recovery of equipment costs in the complaint, Plaintiff does not seek damages for that claim at inquest. (ECF 30-2 at 15).

[3] Plaintiff's complaint noted that Plaintiff would seek collective certification under the FLSA, but Plaintiff ultimately never filed such a motion.

### III. Discussion

#### A. Inquest Standard

Even though a complaint's factual allegations are presumed true in the event of a default, damages allegations are not entitled to the same presumption. *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). The plaintiff must still supply an evidentiary basis for the specific damages amount sought. *Santana v. Latino Express Rest., Inc.*, 198 F. Supp. 3d 285, 292 (S.D.N.Y. 2016). If the plaintiff fails to supply the requisite evidentiary basis for his claimed damages, the Court may decline to award any damages despite the entry of a default. *Belizaire v. RAV Investigative and Sec. Services Ltd.*, 61 F. Supp. 3d 336, 345 (S.D.N.Y. 2014). Where the defendants fail, however, to provide *any* records of wages or hours, Plaintiff's "recollection and estimates of hours worked are presumed to be correct." *Chen v. Jenna Lane, Inc.*, 30 F. Supp. 2d 622, 624 (S.D.N.Y. 1998).

Even where the defendant does not provide any inquest submissions, the plaintiff must still satisfy the Court with evidence that establishes damages "with reasonable certainty." *RGI Brands LLC v. Cognac Brisset-Aurige, S.A.R.L.*, No. 12-CV-1369 (LGS) (AJP), 2013 WL 1668206, at *6 (S.D.N.Y. Apr. 18, 2013), *adopted by* 2013 WL 4505255 (S.D.N.Y. Aug. 23, 2013). An inquest into damages may be conducted without an evidentiary hearing. *See Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 53-54 (2d Cir. 1993); *Maldonado v. La Nueva Rampa, Inc.*, No. 10-CV-8195 (LLS) (JLC), 2012 WL 1669341, at *2 (S.D.N.Y. May 14, 2012) ("[A] hearing is not required where a sufficient basis on which to make a calculation exists."). In this case, no hearing was requested or held, as the damages awarded can be ascertained "with reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999).

B. **Jurisdiction**

This Court has proper subject-matter jurisdiction over the case because Plaintiff has asserted substantive claims under a federal law, the FLSA. *See* 28 U.S.C. § 1331. Therefore, the Court can also exercise supplemental jurisdiction over Plaintiff's state law claims. *See* 28 U.S.C. § 1367.

Although Plaintiff received a default, Plaintiff must still show proper service such that the Court can exercise personal jurisdiction over Defendants. *See Martinez v. Alimentos Saludables Corp.*, No. 16-CV-1997 (DLI) (CLP), 2017 WL 5033650, at *4 (E.D.N.Y. Sept. 22, 2017) ("Personal jurisdiction is a necessary prerequisite to entry of a default judgment."). Under Federal Rule of Civil Procedure 4(e)(1), service on an individual can be effected by "following state law for serving a summons . . . where the district court is located," here New York. New York law permits service of an individual defendant by both delivering the summons and complaint to "a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served" and mailing the summons to the last known residence or place of business. N.Y. C.P.L.R. § 308(2). Here, Plaintiff submitted an affidavit of service stating that Defendant Kacl was served by delivering the summons to an unnamed co-worker of Defendant Kacl at his place of business, Barking Dog, and by mailing a copy of the summons and complaint to Defendant Kacl at the Barking Dog address. (ECF 9).[4]

Likewise, under New York law, service on a corporate defendant can be effected by service on the New York Secretary of State. N.Y. C.P.L.R. § 311(a)(1); N.Y. Bus. Corp. Law

---

[4] The mailing is also required to be in an envelope marked "personal and confidential," to be mailed within 20 days of the personal service. N.Y. C.P.L.R. § 308(2). According to Plaintiff's affidavit of service, a copy of the summons and complaint was mailed to Barking Dog NYC LLC on the same day of personal service, in an envelope marked "PERSONAL & CONFIDENTIAL." (ECF 8).

4

§ 306(b)(1). Here, Plaintiff submitted an affidavit of service stating that Defendant Barking Dog NYC LLC was served via service on the Office of the Secretary of State of the State of New York. (ECF 8).

    **C.**    <u>**Damages**</u>

        1.  <u>FLSA Liability</u>[5]

Plaintiff has adequately alleged that he is covered by the scope of protections offered in the FLSA. The FLSA applies to employees who "were employed in an enterprise engaged in interstate commerce or in the production of goods for interstate commerce." *Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 120 (E.D.N.Y. 2011). An enterprise is engaged in interstate commerce when its employees handle or sell goods that have moved in interstate commerce and whose annual gross sales exceeds $500,00. 29 U.S.C. § 203(s)(1)(A)(i)-(ii). Plaintiff alleges that Defendants' annual gross sales were greater than $500,000. Compl. ¶ 32. Plaintiff further alleges that Defendants used items in their restaurant that were produced outside New York. Compl. ¶ 33; *see also Fermin v. Las Delicias Peruanas Rest., Inc.,* 93 F. Supp. 3d 19, 33 (E.D.N.Y. 2015) (finding it reasonable to infer that a restaurant with over $500,000 in annual sales uses at least some materials and ingredients that did not originate in New York).

Additionally, Plaintiff has sufficiently alleged that Defendants are "employers" liable under the FLSA. Whether one can be considered an employer looks at the degree of "formal control" or "functional control" over the plaintiff. *Barfield v. New York City Health and Hospitals Corp*., 537 F.3d 132, 143 (2d Cir. 2008). Formal control includes the power to "hire and fire the

---

[5] There is no timeliness issue, as Plaintiff's filing suit on September 17, 2018 for conduct that started in January 2017 falls within both the FLSA's two year statute of limitations and the NYLL's six year statute of limitations. *See* 29 U.S.C. § 255(a); N.Y. Lab. Law § 663(3).

5

employees," to set work schedules, to determine the "rate and method of payment," and to "maintain[] employment records." *Carter v. Dutchess Community College*, 735 F.2d 8, 12 (2d Cir. 1984). Plaintiff alleges that Defendants had the power to fire and hire Plaintiff, controlled his terms of employment, and determined his rate of pay. Compl. ¶ 31. Accordingly, Plaintiff has sufficiently alleged that Defendants are liable under the FLSA.

### 2. Minimum Wage Damages

Both the FLSA and NYLL require that employers pay their employees a minimum wage for each hour worked.[6] *See* 29 U.S.C. § 206(a); N.Y. Lab. Law § 652-1. Because a double recovery of unpaid wages under both the FLSA and NYLL is not permitted, the Court can exercise its discretion to elect the statute that "provid[es] the greatest amount of relief." *Hengjin Sun v. China 1221, Inc.*, No. 12-CV-7135 (RJS), 2016 WL 1587242, at *2 (S.D.N.Y. Apr. 19, 2016). Plaintiff alleges that he was paid an hourly rate of $4.00, less than the FLSA or NYLL minimum wage. *See* Declaration of Pablo Ramirez Castillo ("Castillo Decl.") (ECF 30-5) ¶ 16. Because the NYLL had a higher minimum wage at the time of the violation, I recommend a calculation of minimum wage damages under the NYLL, as also proposed by Plaintiff. (*See* ECF 30-5 at 24).

Although Plaintiff requests an award of a minimum wage of $11.00 per hour under the NYLL, Plaintiff fails to explain why that rate applies to him other than the conclusory assertion in the proposed findings of fact and conclusions of law that "[t]his is the applicable rate for Plaintiff." (ECF 30-2 ¶ 10). Under the NYLL, the $11.00 hourly rate that was in effect during Plaintiff's term of employment in 2017 only applies to "large employers," defined as those

---

[6] Although Defendants may credit tips to Plaintiff's wages if Plaintiff was notified that the tips were being so credited, 29 U.S.C. § 203(m)(2), Plaintiff alleges he was never informed of a tip credit. *See* Compl. ¶ 46.

6

employing "eleven or more employees." *See* N.Y. Lab. Law § 652-1 (a)(i). Otherwise, the applicable minimum wage rate was $10.50. *See* N.Y. Lab. Law § 652-1 (a)(ii). In the absence of any allegation that Defendants' restaurant employed eleven or more employees, I adopt the default $10.50 minimum wage rate. *See Reyes v. Lincoln Deli Grocery Corp.*, No. 17-CV-2732 (KBF), 2018 WL 2722455, at *7 (S.D.N.Y. June 5, 2018).

Plaintiff alleges that he worked approximately 48 hours a week from January 2017 through September 2017. Castillo Decl. ¶ 14. Plaintiff calculates his minimum wage damages based upon an assumption that he started on January 1, 2017 and ended on September 15, 2017, for a total work period of 37 weeks. (*See* ECF 30-5 at 24). Where there are no records supporting these factual allegations, the Court may rely on Plaintiff's "recollections alone" when the defendant defaults. *See Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 335 (S.D.N.Y. 2005); *see also Chen*, 30 F. Supp. 2d at 624 ("in the absence of rebuttal by defendants, plaintiffs' recollection and estimates of hours worked are presumed to be correct"). Applying the above minimum wage rate of $10.50 for the 40 hours per week of work for the 37 weeks of his employment, Plaintiff is owed **$9,620** ([$10.50-$4.00] x 40 hours/week x 37 weeks) in unpaid minimum wages.

3. Overtime Damages[7]

Under both the FLSA and NYLL, employees must be paid one and one-half times their regular hourly rate for any work performed in excess of a forty-hour work week. *See* 29 U.S.C. § 207(a)(2); N.Y.C.R.R. § 146-1.4. Because Plaintiff's regular hourly rate was below the minimum

---

[7] Under the NYLL, an employee is due an additional hour of pay "at the basic minimum hourly rate" if his entire workday, including breaks, exceeds ten hours. N.Y.C.R.R. § 146-1.6. Plaintiff admits that he did not work any days that qualify for a spread of hours pay and accordingly has not requested those damages. (ECF 30-3).

wage, the appropriate overtime rate would be one-and-a-half times the minimum wage rate. *See Sanchez v. Jyp Foods Inc.*, No. 16-CV-4472 (JLC), 2018 WL 4502008, at *7 (S.D.N.Y. Sept. 20, 2018). As discussed above, the minimum wage under the NYLL for the relevant period was $10.50, meaning that the overtime rate would be $15.75 ($10.50 x 1.5). Because Plaintiff alleges that he worked 48 hours per week, he worked for eight hours of overtime per week for which he did not receive any overtime compensation. Castillo Decl. ¶¶ 14, 25. Accordingly, Plaintiff should be entitled to **$3,478** ([$15.75-$4.00] x 8 hours x 37 weeks) in unpaid overtime.

        4.   Wage Notice and Statement Damages

The NYLL requires that employers provide their employees with wage notices in English and the employee's primary language that include, *inter alia*, the rate of pay, the basis of calculating the pay, the regularly scheduled pay day, and the employer's name and physical address. N.Y. Lab. Law § 195(1)(a). The NYLL also requires that employers accompany every payment of wages with a wage statement that includes, *inter alia*, the dates of work covered by that payment, the rate of pay used, the basis of calculating the payment, and the name of the employer. N.Y. Lab. Law § 195(3). Failure to provide a proper wage statement under §195(1)(a) or wage notice under §195(3) entitles an employee to recover fifty dollars in damages for each work day that the violation occurs, "but not to exceed a total of five thousand dollars." N.Y. Lab. Law § 198 (1-b); N.Y. Lab. Law § 198 (1-d). Plaintiff states in his declaration that he was never provided a wage notice under §195(1) or an accurate wage statement under §195(3) throughout the time of his employment. Castillo Decl. ¶¶ 21-23. Because Plaintiff's employment of over nine months would result in damages over the $5,000 maximum, I

recommend that Plaintiff be awarded the maximum of $5,000 each for the wage statement and notice violations for a total of **$10,000**.

5. Liquidated Damages[8]

Liquidated damages of 100% of the owed wages are appropriate for an unpaid wages claim "unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law." N.Y. Lab. Law § 198 (1-a). As Defendants have not submitted any evidence that their non-compliance was in good faith, Defendants are liable for liquidated damages for both the minimum wage and overtime pay violations. Accordingly, I recommend that Plaintiff be awarded liquidated damages of **$13,098** ($9,620 + $3,478).

D. **Interest**

Plaintiff seeks prejudgment interest under the NYLL for "unpaid minimum and overtime wages." (ECF 30-1 at 8). Although a plaintiff may not recover both liquidated damages and prejudgment interest under the FLSA, no such limitation applies to liquidated damages and prejudgment interest awarded under the NYLL. *See Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1064 (2d Cir. 1988). Because I recommend that liquidated damages be awarded under the NYLL, pre-judgment interest is recoverable here. New York law provides that interest shall be calculated at nine percent per year. N.Y. C.P.L.R. § 5004. Where, as here, the damages were incurred at various times, interest would run from either "the date it was incurred or upon all of the damages from a single reasonable intermediate date." *See* N.Y. C.P.L.R. § 5001. Interest only accrues as to compensatory damages and is not based on liquidated damages. *Mosso-*

---

[8] Generally, a plaintiff may not receive a "double recovery for liquidated damages under both the FLSA and NYLL." *Santana*, 198 F. Supp. 3d at 294. Although Plaintiff provides the standard for liquidated damages under both the FLSA and NYLL, his proposed findings of fact make clear that he is only seeking liquidated damages under one of them. (ECF 30-2 at 15).

9

*Salazar v. New Lexington Corp.*, No. 18-CV-2505 (GBD) (SDA), 2018 WL 6288137, at *5 (S.D.N.Y. Sept. 4, 2018), *adopted by* 2018 WL 4961456 (S.D.N.Y. Oct. 15, 2018). Because failure to provide proper wage statements and notices is separate from unpaid wages, prejudgment interest does not accrue as to those statutory damages either. *See Martinez*, 2017 WL 5033650, at *24.

Plaintiff proposes an intermediate date of May 9, 2017. (ECF 30-4). Because Plaintiff states in his declaration that he worked from January through September 2017, Castillo Decl. ¶ 14, I find that the proposed intermediate date is appropriate as it is the median date between the suggested start and end dates of January 1, 2017 and September 15, 2017. *See Conway v. Icahn & Co., Inc.*, 16 F.3d 504, 512 (2d Cir. 1994) (noting courts have "wide discretion" to determine the intermediate date). Using that date, Plaintiff should be awarded prejudgment interest of nine percent per annum, *i.e.*, $3.23 per day, from May 9, 2017 through August 16, 2019, the date Plaintiff filed his inquest papers. ([$9,620 + $3,478] x 0.09 x [1/365]). The total prejudgment interest would thus be **$2,677.67** ($3.23/day x 829 days), in addition to $3.23 per day from August 17, 2019 through the date of judgment.[9]

Plaintiff further seeks post-judgment interest. *See* Compl. at 19. Although Plaintiff requests a post-judgment interest award under the NYLL of an additional 15%, ECF 30-2 ¶ 59, post-judgment interest "is governed by federal statute" even where damages are awarded

---

[9] This is different from Plaintiff's requested prejudgment interest amount. (*See* ECF 30-4). Although Plaintiff does not show any calculation of his requested amount, Plaintiff's significantly higher number is likely due to including the liquidated damages and statutory damages in the interest calculation, which are not appropriate to be included in prejudgment interest. *See* N.Y. Lab. Law § 663. Plaintiff does not appear to dispute this point as he repeatedly acknowledges that his prejudgment interest request is limited to the "award of backpay." (*See, e.g.*, ECF 30-1 at 8).

under state law. *See Morales v. Mw Bronx, Inc.*, No. 15-CV-6296 (TPG), 2016 WL 4084159, at *11 (S.D.N.Y. Aug. 1, 2016). Accordingly, I recommend the award of post-judgment interest at the federal statutory rate under 28 U.S.C. §1961 (a).[10] *See Schipani v. McLeod*, 541 F.3d 158, 165 (2d Cir. 2008) (affirming that post-judgment interest is mandatory for civil judgments in federal district courts).

### E.     Attorney's Fees and Costs

Plaintiff's prevailing on his NYLL claim further entitles him to an award of attorney's fees. N.Y. Lab. Law § 198 (1-a). The Court has "considerable discretion" in determining a reasonable fee. *See Matusick v. Erie Cty. Water Auth.*, 757 F.3d 31, 64 (2d Cir. 2014). To evaluate "reasonableness," courts often employ the lodestar approach, calculated by multiplying the reasonable hourly rate and with the reasonable number of hours required by the matter. *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011).

The Court can draw upon its own knowledge as to market rates as well as rely on submissions from the parties. *Adorno v. Port Auth.*, 685 F. Supp. 2d 507, 511-12 (S.D.N.Y. 2010). Relevant factors include the attorney's experience in the field, what similar attorneys in the district charge, and what other clients pay for similar services. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 191 (2d Cir. 2008). Plaintiff's counsel billed at the following rates:

Michael Faillace: $450/hour

Daniel Tannenbaum: $350/hour

---

[10] To be calculated at a rate "equal to the weekly average 1-year constant maturity Treasury yield" at the date of the entry of judgment. 28 U.S.C. § 1961(a).

11

Paralegal: $100/hour.

Declaration of Michael Faillace, Esq. in Support of Plaintiff's Motion for Default Judgment ("Faillace Decl.") (ECF 30-5) ¶ 65. Mr. Faillace states that he is the managing partner of his firm and has been practicing law since 1983. *Id*. Mr. Tannenbaum is listed as an associate with Mr. Faillace's firm and having graduated law school in 2008. *Id*. In contrast, no identifying or background information is provided for the paralegal, identified only by the initials "PL." (*See id*.; ECF 30-5 at 26-27).

Courts have routinely found that Mr. Faillace's and his firm's charged hourly rates are excessive. *See Montes v. 11 Hanover Group LLC*, No. 17-CV-9376 (SDA), 2019 WL 4392516, at *2 (S.D.N.Y. Sept. 12, 2019) (finding Mr. Faillace's $450 hourly rate "unreasonable"); *Gervacio v. AJR Laundry Services Inc.*, No. 17-CV-9632 (AJN), 2019 WL 330631, at *2 (S.D.N.Y. Jan. 25, 2019) (citing previous cases to find Mr. Faillace's $450 hourly rate "unreasonably high"); *Hernandez v. JRPAC Inc.*, No. 14-CV-4176 (PAE), 2017 WL 66325, at *3 (S.D.N.Y. Jan. 6, 2017) (noting FLSA partners typically receive $400/hour, senior associates $300/hour, and junior associates $225/hour). This concern also applies to this case, due to the lack of complexity in a default case and the lack of evidence of the hourly rate typically charged by Mr. Faillace's firm. *See Galeana v. Lemongrass on Broadway Corp.*, 120 F. Supp. 3d 306, 324 (S.D.N.Y. 2014). More appropriate hourly rates would be $400 for Mr. Faillace and $300 for Mr. Tannenbaum. Because Plaintiff's counsel has failed to provide any information regarding the paralegal, such as their name or experience level, there is no information for the Court to determine the proper hourly rate to award for them. Accordingly, I recommend awarding no fees for the billed paralegal work. *See Penta v. Costco Wholesale Corp.*, No. 14-CV-3587 (DLI) (VMS), 2016 WL

1171612, at *6 n. 4 (E.D.N.Y. Mar. 25, 2016) (awarding no fees for an "unidentified paralegal"); *Lizondro-Garcia v. Kefi LLC*, No. 12-CV-1906 (HBP), 2015 WL 4006896, at *8 (S.D.N.Y. July 1, 2015) (declining to award fees for paralegals where counsel failed to provide their names and qualifications); *Executive Risk Indem. Inc. v. FieldBridge Assoc. LLC*, No. 13-CV-4354 (KNF), 2015 WL 1267308, at *5 (S.D.N.Y. Mar. 18, 2015) (declining to award fees for paralegals who "are never mentioned by name" and "no information is provided about them").

In assessing reasonableness of hours spent, the Court examines whether a "reasonable attorney would have engaged in similar time expenditures." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992). Where the amount billed is excessive, the Court "should reduce the stated hours accordingly." *Cocoletzi v. Fat Sal's Pizza II, Corp.*, No. 15-CV-2696 (CM) (DF), 2019 WL 92456, at *11 (S.D.N.Y. Jan. 3, 2019). Plaintiff's counsel "bears the burden of establishing entitlement to an award and documenting the appropriate hours expended." *Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1160 (2d Cir. 1994). Here, Plaintiff's counsel submitted billing records, reflecting the expenditure of 14.6 hours on the matter. (ECF 30-5 at 26-27).

While 14.6 hours is not, on its face, an excessive amount, the billing entries reveal that Mr. Faillace's firm inflated their hours. For example, Mr. Faillace continued his practice of improperly billing, here 0.3 hours, for reviewing the complaint to classify it for future use, a task that benefits Mr. Faillace in his other cases but does not benefit Plaintiff in this matter. *Cf. Velazquez Cuautle v. Hudson Market 303 LLC*, No. 18-CV-2968 (OTW), 2019 WL 5569603, at *1 (S.D.N.Y. Oct. 29, 2019). Mr. Faillace then spent 1.3 hours drafting the two requests for certificates of default, which involves completing a one-page template for each defendant. (ECF 30-5 at 26). As anticipated by Mr. Faillace's practice of classifying complaints for use in future

13

litigation, the complaint filed in this matter largely copies verbatim the language from complaints in other cases, requiring only the insertion of new names and minor factual details. *Compare* ECF 1 with *Reanos Avila v New Hudson Family Rest., Inc.*, No. 18-CV-11102 (VB), ECF 1 (S.D.N.Y. Nov. 28, 2018), *and Velazquez Cuautle*, ECF 1 (S.D.N.Y. April 4, 2018), *and Ramirez Clemente v. East Side Pizza Corp.*, No. 18-CV-2036 (AJN), ECF 1 (S.D.N.Y. Mar. 6, 2018), *and Flores Lorenzana v. Yereim, Inc.*, No. 18-CV-1708 (PED), ECF 1 (S.D.N.Y. Feb. 23, 2018). As a result, Mr. Faillace's billing of three hours for drafting the complaint would reasonably be completed in half that time. With these reductions, Mr. Faillace's billed hours should be reduced to 6.4 hours (9.3-2.9), resulting in a reasonable billed amount of $2,560 (6.4 hours x $400 hourly rate). Taking into account his new hourly rate, Mr. Tannenbaum's billed fees should also be reduced to a reasonable amount of $180 (0.6 hours x $300 hourly rate). As explained above, I recommend not awarding fees for the unidentified paralegal.

Plaintiff also seeks recovery of $514 for filing and service costs. (ECF 30-5 at 28). "Where an attorney fails to provide suitable documentation to substantiate the costs incurred, a court may decline to award costs." *See Zimmerman v. Portfolio Recovery Assoc. LLC*, No. 09-CV-4602 (PGG), 2013 WL 6508813, at *13 (S.D.N.Y. Dec. 12, 2013). Because Plaintiff declined to provide any evidence of costs, the Court will take judicial notice of the $400 filing fee, as reflected on the docket, but will deny any additional costs. *See Mango v. BuzzFeed, Inc.*, 356 F. Supp. 3d 368, 378 (S.D.N.Y. 2019). Accordingly, the total attorney's fees and costs award totals **$3,140** ($2,560 + $180 + $400).

### F. Joint and Several Liability

Plaintiff also alleges that Defendants should be held jointly and severally liable as a joint employer. Compl. ¶ 28. "[T]wo or more employers may be found to be 'joint employers' where an employee 'performs work which simultaneously benefits two or more employers . . . .'" *Moon v. Kwon*, 248 F. Supp. 2d 201, 237 (S.D.N.Y. 2002) (quoting 29 C.F.R. § 791.2(b)). Here, Plaintiff alleges that Defendant Kacl exercised "operational control" and held an ownership interest in Defendant Barking Dog NYC, LLC. Compl. ¶ 25. Plaintiff further alleges that Defendant Kacl personally determined the compensation of the restaurant's employees, established their schedules, and possessed the authority to hire and fire employees. Compl. ¶ 23. This is sufficient to find that Defendants Kacl and Barking Dog NYC, LLC were joint employers such as to be held jointly and severally liable. *See Moon*, 248 F. Supp. 2d at 237 (noting "overwhelming weight of authority" that a corporate officer with operational control of a company is a jointly and severally liable employer).

### IV. Conclusion

For the foregoing reasons, I recommend that Defendants be held jointly and severally liable to Plaintiff for the following:

- $36,196 in damages ($9,620 minimum wage damages + $3,478 OT damages + $10,000 notice damages + $13,098 liquidated damages);
- $2,677.67 in pre-judgment interest and an additional $3.23 per day from August 17, 2019 to the date of judgment, to be calculated by the Clerk of Court;
- $3,140 in attorney's fees and costs; and
- post-judgment interest at the statutory rate pursuant to 28 U.S.C. §1961.

15

**V.      Objections**

In accordance with 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days (including weekends and holidays) from receipt of this Report to file written objections. *See also* FED. R. CIV. P. 6 (allowing three (3) additional days for service by mail). A party may respond to any objections within fourteen (14) days after being served. Such objections, and any responses to objections, shall be addressed to the Honorable Vernon S. Broderick, United States District Judge. Any request for an extension of time for filing objections must be directed to Judge Broderick.

**FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237–38 (2d Cir. 1983).

                                      Respectfully submitted,

                                      *s/ Ona T. Wang*

Dated: January 8, 2020                               **Ona T. Wang**
      New York, New York                 United States Magistrate Judge